**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| LUIS COLON, | ) | CASE NO. 1:08-CV-00199 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| ROBERT TASKEY, *et al*. | ) | |
| | ) | |
| Respondents. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Luis Colon ("Colon"), challenges the constitutionality of his conviction in the case of *City of Cleveland v. Colon*, Cleveland Municipal Court Case No. 2004CRB029977. Colon, represented by counsel, filed a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on January 23, 2008, with the United States District Court for the Northern District of Ohio. On July 3, 2008, Commissioner Robert Taskey ("Respondent") filed his Answer/Return of Writ. (Doc. No. 7.) Colon filed a Traverse on September 16, 2008. (Doc. No. 10.) This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that Colon's petition be DENIED.

**I. Summary of Facts**

In a habeas corpus proceeding, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002). The state appellate court summarized the facts underlying Colon's conviction as follows:

[*P2]  On September 17, 2004, Colon was charged with domestic violence in violation of R.C. 2919.25. Colon entered a plea of not guilty to the charge, and the case proceeded to a bench trial.

[*P3]  The transcript of proceedings reflects that on August 28, 2004, at approximately 2:30 a.m., Evelyn Rivera and her husband, Adam Pabon, observed a man beating a woman outside their house. Rivera called 911 to report the incident. Rivera recognized the victim as a neighbor from down the street. Rivera observed that the victim was bleeding from the mouth and had blood all over her face, had a black and blue eye, and was bruised all over. Rivera identified the defendant as the man she observed hitting the victim.

[*P4]  Adam Pabon also identified the defendant as the person who was hitting the victim. Pabon stated that he went outside and told the man not to hit the victim any more, but the man continued with his assault on the victim. Pabon told Rivera to call 911. He observed that the victim was bleeding and appeared "beat up." When the police arrived, Pabon told the police "he's right here," and Colon began to run. Pabon spoke to the victim approximately one minute later and described her as "really sad," hurt, bleeding, and crying. Over objection at trial, Pabon indicated that the victim said that it was her boyfriend who had been beating her.

[*P5]  Officer Brenda Korber testified that she responded to the scene of the assault and observed the victim sitting on a curb with a bruised and "bloodied face." The officer also observed the victim's "clothes were dirty from the ground." Officer Korber described the victim's demeanor as being "upset and crying." Over objection, Officer Korber testified that the victim indicated she was walking home from a club with another man when Colon came up and began assaulting her in the face and head. When Officer Korber asked the victim who had assaulted her, the victim provided Colon's name and date of birth. The victim also informed the officer that she had lived with Colon and dated him for approximately two years, but that they had not been together for six months.

[*P6]  The objections made by defense counsel regarding the victim's statements were overruled by the court based on the excited utterance exception to the hearsay rule. Also, a medical report from the emergency room was introduced, in which the chief complaint by the victim was as follows: "assaulted by boyfriend, hit to face, lips swollen." We also note that attempts were made to subpoena the victim to testify as a witness, but she did not appear in court to testify.

*City of Cleveland v. Colon*, 2007-Ohio-269, 2007 Ohio App. LEXIS 254 (Ohio Ct. App., Jan. 25, 2007).

## II. Procedural History

**A. Conviction**

On September 17, 2004, Colon was charged in Cleveland Municipal Court with one count of domestic violence in violation of Ohio Revised Code ("O.R.C.") § 2919.25(A). Colon, represented by counsel, pled "not guilty" and the matter proceeded to a bench trial. The trial court found Colon guilty and sentenced him to one-hundred eighty (180) days of incarceration, suspending all but thirty (30) days, and imposed a fine.[1] Colon's motion to stay the sentence pending the outcome of his appeal was granted. *Colon*, 2007-Ohio-268 at ¶7.

**B. Direct Appeal**

On February 27, 2006, Colon, through counsel, filed a timely Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court"). On January 25, 2007, the state appellate court affirmed Colon's conviction. *Colon*, 2007-Ohio-268.

Subsequently, Colon filed a Notice of Appeal with the Supreme Court of Ohio, but the case was not accepted for review. *Cleveland v. Colon*, 114 Ohio St. 3d 1426, 868 N.E.2d 680 (Ohio 2007).

On September 18, 2007, Colon filed a petition for a writ of certiorari with the United States Supreme Court. Certiorari was denied on January 14, 2008. *Colon v. City of Cleveland*, 128 S. Ct. 1080, 169 L. Ed. 2d 821 (2008).

---

[1] The trial court's sentencing entry was not filed with the Court. It is unclear whether Colon was fined $500 or $1000, but both parties agree half of the fine was suspended pending the outcome of his appeal. Notwithstanding the state appellate court's order remanding the case to the trial court for execution of sentence, Respondent contends that fifteen days of the thirty day sentence remains suspended. (Doc. No. 7 at 1.)

**C. Federal Habeas Petition**

On January 23, 2008, Colon filed a Petition for Writ of Habeas Corpus and asserted a single ground for relief:

> GROUND ONE: The Sixth Amendment's Confrontation Clause bars the prosecution from introducing statements a non-testifying witness made to police during an interview that focused, not on an on-going emergency, but on events that had already transpired.

(Doc. No. 1.)

### III. Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v.*

*Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A.  Ground One: Confrontation Clause**

Colon argues that he was deprived of his Sixth Amendment right to confront the witnesses against him when the trial court admitted testimonial statements made by the assault victim to the police officer who responded to the 911 call.  (Doc. Nos. 1 & 10.)  The victim did not appear at Colon's trial and had not previously been subject to cross-examination.  (Doc. Nos. 1 & 10.)  The trial court admitted the hearsay testimony of the victim pursuant to the excited utterance exception to the hearsay rule.  Colon does not challenge the application of the excited utterance

-5-

exception to the admitted statements. Instead, Colon argues that admitting the statements under any circumstance violated his Sixth Amendment rights.

The Confrontation Clause of the Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This guarantee applies to both federal and state prosecutions. *See Pointer v. Texas*, 380 U.S. 400, 406 (1965). According to clearly established Supreme Court precedent, the Confrontation Clause bars the admission of "testimonial statements" made by persons who are not subject to cross-examination. The bar applies regardless of whether a hearsay exception would otherwise allow admission of the statements.[2] *See Crawford v. Washington*, 541 U.S. 36, 68-69 (2004) ("leav[ing] for another day any effort to spell out a comprehensive definition of 'testimonial'"). However, the Supreme Court singled out "[s]tatements taken by police officers in the course of interrogations" as "testimonial under even a narrow standard." *Id*. at 52. Later, the Supreme Court refined its definition of testimonial as follows:

> Statements are non-testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington/Hammon v. Indiana*, 547 U.S. 813, 822 (2006).

---

[2] The *Crawford* decision overruled the Supreme Court's previous position concerning the Confrontation Clause as set forth in *Ohio v. Roberts*, 448 U.S. 56 (1980). According to the *Roberts* test, the admission of a statement from a non-testifying witness did not violate the Sixth Amendment if (1) the statement bore adequate indicia of reliability; and (2) the evidence (a) fell within a firmly rooted hearsay exception, or (b) bore particularized guarantees of trustworthiness.

-6-

The state appellate court's decision contains the following analysis and conclusion:

[*P14] ... [A] Confrontation Clause analysis cannot be avoided in instances where a testimonial statement falls within a firmly rooted hearsay exception.

[*P15] As the Sixth Circuit Court of Appeals recognized:

"In the wake of *Crawford*, then, it can no longer be said that 'the judicial inquiry is at an end,' so long as an out-of-court statement qualifies as an excited utterance or falls within some other 'firmly rooted' hearsay exception.  Here, if we hold that the district court properly admitted the out-of-court statements of Defendant's wife as excited utterances, there would remain the further question whether these statements were 'testimonial.'  If so, they could not have been properly admitted at trial absent Mrs. Hadley's unavailability as a witness and a prior opportunity to cross-examine her."

*United States v. Hadley* (6th Cir. 2005), 431 F.3d 484, 495 (Internal citation omitted).

[*P16] Pursuant to the above authority, even where an out-of-court statement falls within a firmly rooted hearsay exception, such as an excited utterance, a court must still consider whether the statement nonetheless should have been excluded under the Confrontation Clause as construed in *Crawford*.  Since only testimonial statements implicate the Confrontation Clause, we must proceed to consider whether the victim's statements in this case were testimonial or non-testimonial in nature.

[*P17] The Supreme Court provided guidance for determining whether a statement is testimonial or non-testimonial in *Davis v. Washington* (2006), [547] U.S. [813], 126 S.Ct. 2266, 165 L.Ed.2d 224.  The Supreme Court held that statements made during police "interrogations" are non-testimonial when they are made "under circumstances objectively indicating that the primary purpose of interrogation is to enable police assistance to meet an ongoing emergency" and are testimonial when "the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id*. at paragraph one of the syllabus.

[*P18] Likewise, the Ohio Supreme Court has instructed that statements should be viewed "objectively when determining whether they implicate Confrontation Clause protection pursuant to Crawford." *State v. Stahl*, 111 Ohio St.3d 186, 192, 2006 Ohio 5482, 855 N.E.2d 834.  In *Stahl*, the Ohio Supreme Court indicated: "For Confrontation Clause purposes, a testimonial statement includes one made

'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' *Id*. at paragraph one of the syllabus (*Crawford v. Washington* (2004), 541 U.S. 36, 52, 124 S.Ct. 1354, 158 L.Ed.2d 177, followed.)" Additionally, "[i]n determining whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement; the intent of a questioner is relevant only if it could affect a reasonable declarant's expectations." *Stahl*, 111 Ohio St.3d at paragraph two of the syllabus.

[*P19]  In *Stahl*, the court referred to the circumstances in *Davis v. Washington* and *Hammon v. Indiana* (2006), [547] U.S. [813], 126 S.Ct. 2266, 165 L.Ed.2d 224. The court recognized: "In *Davis*, the court held that a 911 telephone call made to seek protection from immediate danger did not constitute a testimonial statement for Sixth Amendment purposes. In contrast, the court in *Hammon* held as testimonial a victim's statement to a police officer after the officer arrived at the home in response to a report of domestic disturbance." *Stahl*, 111 Ohio St.3d at 192. We note that in *Hammon*, when the police arrived, the victim told the police she was fine, the police were able to talk to the suspect, and the police interrogation of the victim and the suspect occurred in separate rooms some time after the events had passed. 126 S.Ct. 2266.

[*P20]  Following the above authority, we find that under the circumstances of this case, the victim's statements were non-testimonial in nature. Unlike the circumstances in *Hammon*, the incident had just concluded when the officer arrived, the defendant had just fled the scene and had not been secured by the police, and the victim was hurt, bleeding and crying. The circumstances objectively indicate that the primary purpose of the interrogation was to enable the police to assist the victim in an ongoing emergency.

\*\*\*

[*P23]  The facts in this case objectively indicate that at the time the statements were made, the police officer was assisting the victim with an ongoing emergency. The suspect had just left the scene after beating the victim, the victim was bleeding from the face, and she was upset and crying. Additionally, the victim made the statements with the primary purpose of enabling the police to "meet an ongoing emergency," *i.e.*, to apprehend the person involved.... We do not believe that the statements made by the victim were under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. Accordingly, we find that the statements were non-testimonial in nature.

*Colon*, 2007-Ohio-269 at ¶¶14-23.

Upon review of the state appellate court's opinion, it is clear the court identified and applied the correct legal principles from Supreme Court decisions. Consequently, before granting a habeas petition, a federal court must find not only that a state court's application of the law was incorrect or erroneous, but also "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts' of petitioner's case") (citations omitted). "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Id*. (*quoting Lockyer v. Andrade*, 538 U.S. 63, (2003)).

The Supreme Court's decision in *Davis*/*Hammon* involved two distinct factual situations – emergency and non-emergency interrogations – which resulted in different outcomes when statements relating to identification were given to the police. Colon asserts that, through *dicta*, the Supreme Court in *Davis* noted that statements made to a 911 dispatcher (and by extrapolation to the police) after an emergency has ended constitute testimonial statements. (Doc. No. 1, Statement in Support at 6.) The Supreme Court observed that the emergency in *Davis* appeared to have ended when the defendant left the premises where the assault occurred. *Davis*/*Hammon*, 547 U.S. at 829. However, whether statements made during the call but *after* the defendant left the scene were testimonial was not part of the Supreme Court's holding. Under AEDPA, the phrase "clearly established Federal law, as determined by the Supreme Court of the United States ... refers to the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions...." *Williams*, 529 U.S. at 412.

-9-

Nevertheless, the Supreme Court distinguished the 911 call in *Davis* from the in-home interrogation in *Hammon* on the basis that the 911 caller was still in immediate danger while the victim at the in-home interrogation was safe in police protection. 547 U.S. at 831. The Supreme Court held that statements made during a 911 call, even though they resulted in the identification of the victim's assailant, were not testimonial because they were necessary to help the police resolve a *present* emergency rather than learn what happened in the *past*. *Id*. at 827 (emphasis added). Conversely, the Court further found that Mrs. Hammon's statements to police at her home regarding a domestic violence incident were testimonial because "there was no emergency in progress" despite the fact that her husband, the assailant, was still at home.[3] *Id*. at 829.

The facts of the instant case, however, fall somewhere between the two situations addressed by the Supreme Court in *Davis/Hammon*. Here, the testimony of record reflects that Colon fled the scene as the police officer arrived. (Tr. 32-33.) The victim was clearly not fine, but was bleeding, upset, and crying. This scenario is markedly different than the in-home interrogation that occurred in *Hammon* after both parties were calm and the police separated Mrs. Hammon from her spouse. In this Court's view, the situation in Colon's case is factually more similar to the 911 call in *Davis* than the *Hammon* in-home interrogation. In *Davis/Hammon*, an ongoing emergency was characterized as an immediate and ongoing threat *to the safety of the declarant*. 547 U.S. at 822, 827 (emphasis added); *accord United States v. Powers*, 500 F.3d 500, 507 (6th Cir. 2007). Although the Supreme Court emphasized that the *Hammon* victim, who was

---

[3] When police arrived on the scene, they found Mrs. Hammon sitting alone on her front porch. *Davis/Hammon*, 547 U.S. at 819. Though she appeared "somewhat frightened," she stated that "nothing was the matter." *Id*. One officer questioned Mrs. Hammon, while the other spoke to Mr. Hammon separately and in another room. *Id*. She told the officer she was fine and that there was no immediate threat to her person. *Id*. at 830.

interrogated in her home, was safe and under the protection of the police while the 911 caller was not, this Court rejects the assertion that *Davis*/*Hammon* established a bright-line rule rendering any statements made by a victim at the crime scene testimonial when the assailant is not present. To the contrary, the Supreme Court expressly rejected the proposition that responses to initial police inquiries at a crime scene are always testimonial in nature. 547 U.S. at 832.

In many respects, this case is more similar to the facts of *United States v. Arnold*, 486 F.3d 177 (6th Cir. 2007)[4] than either the *Davis* or *Hammon* scenarios. In *Arnold*, the victim fled her home, where she was assaulted, and called the police on a pay phone. The Sixth Circuit found that statements made by the victim to the police after they arrived at the scene were non-testimonial.[5] The *Arnold* court, quoting the *Davis/Hammon* decision, stated that "[the Supreme Court has] already observed of domestic disputes that officers called to investigate . . . need to know whom they are dealing with in order to assess the situation, the threat to their own safety, and possible danger to the potential victim." *Arnold*, 486 F.3d at 188-189 (internal citations and quotation marks omitted). The Sixth Circuit further observed as follows:

> As *Davis*'s assessment of the 911 call and the on-the-scene statements indicates, the line between testimonial and nontestimonial statements will not always be clear. Even if bona fide 911 calls frequently will contain at least some nontestimonial statements (assuming the emergency is real and the threat ongoing) and even if a victim's statements to police at the scene of the crime

---

[4] *Arnold* was decided in May of 2007 – less than four months after the state appellate court affirmed Colon's conviction.

[5] There are some significant factual differences between the present case and *Arnold*. In *Arnold*, statements made to police when they arrived at the scene were not in response to police questions. Also, the assailant was unaware the victim had called 911 or that the police had arrived at the scene.

> frequently will contain testimonial statements (assuming the emergency has dissipated), that will not always be the case, and difficult boundary disputes will continue to emerge. Each victim statement thus must be assessed on its own terms and in its own context to determine on which side of the line it falls.

*Arnold*, 486 F.3d at 189.

The state appellate court found that the statements were non-testimonial as they were made with the primary purpose of enabling the officer to meet an ongoing emergency. When the officer arrived, the suspect had just left the scene after beating the victim, who was bleeding from the face, upset and crying. It is not unreasonable to suggest, under these facts, that the scene was not entirely secure and the emergency averted because one officer arrived as the assailant fled. Certainly, Colon was in the vicinity and whether he would return would be a concern to the officer, the victim, and the witness – Mr. Pabon.[6]

Based upon the facts and the still evolving status of the law on the subject, this Court cannot say that the state appellate court's ruling involved an objectively unreasonable application of clearly established federal law. As such, Colon's sole ground for relief is without merit.

### IV. Conclusion

For the foregoing reasons, the Magistrate Judge recommends Colon's Petition be DENIED.

<div align="right">s/ Greg White<br>U.S. MAGISTRATE JUDGE</div>

Date: March 2, 2009

---

[6] Mr. Pabon testified that Colon was very angry and cursing at him as he tried to stop the violence. (Tr. 40.)


## **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**